ELLA WEED CENTER, Respondent, v. JAMES L. WEED, Appellant.

Where a material representation is made by one of the parties to a negoti-ation, in regard to its subject-matter, upon which it is intended another party should rely, and upon which he does rely to his prejudice, such representation will be given a contractual effect and the party making it will be bound, as by a promise, to make it good.

W. died intestate seized of three parcels of real estate and leaving a widow and four children, two of whom are the parties. At the time of his death his widow owned a house and lot known as the homestead. One of the pieces of real estate was at the time of the death of W. in the possession of P., one of the daughters, who claimed that she had gone into possession under an agreement with her father which had been performed on her part. This claim was disputed by the other heirs. The widow subsequently died intestate. Plaintiff at the solicitation of defendant, and upon his representation that his mother had not to his knowledge executed a will or a deed of the homestead, agreed to join with her other sister and defendant in a deed to P. of the lot occupied by the latter, she agreeing to convey to them her interest in the two other lots formerly owned by her father and in the homestead. Defend-ant stated to plaintiff that if she entered into this arrangement she would have one-third of the homestead, and one-fourth of the personal property. This agreement was carried out. Defendant was present when the deed from P. of her interest in the homestead was drawn and gave the description; it was also described as the same lands and prem-ises owned by his mother at her death. The sisters before the execution of the deed went to the homestead and made an inventory of the personal effects in defendant's presence without any objection or claim of exclusive ownership on his part. The mother had in fact executed a deed conveying to defendant the homestead and all the personal property, possession to be given at the death of the grantor. This deed, defendant delivered to a friend the day before the other deeds were executed to be placed upon record as soon as the clerk's office was opened the next day. *Held*, that a judgment adjudging plaintiff to be the equitable owner of an undivided one-third of the homestead, and directing defendant to convey the same to her was proper; that aside from the question of fraud, the facts disclosed all the essential elements of an oral contract between the parties which had been so far performed by plaintiff as entitled her in equity to specific performance on the part of defendant; that defendant's representations were the legal equivalent of a surrender by him of exclusive ownership of the homestead under his deed.

Reported below, 63 Hun, 560.

(Argued April 10, 1893; decided June 13, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made March 29, 1892, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover an alleged equitable interest in certain real estate.

*John D. Teller* for appellant.   The complaint should have been dismissed, for the reason that a court of equity is not the proper forum in which to try the question of title, and the plaintiff not being in possession, has no standing in court to ask for the removal of a cloud upon her assumed title. (*United States* v. *Wilson*, 118 U. S. 86 ; *Marks* v. *Main*, 4 Mack. 559 ; *Watson* v. *L. B. Co.*, 61 Mich. 595 ; *Mecartney* v. *Morse*, 24 N. E. Rep. 576 ; *Phillips* v. *R., W. & O. R. Co.*, 9 N. Y. Supp. 799 ; *Van Wagenun* v. *Botsford*, 13 Wkly. Dig. 381 ; Pom. Eq. Juris. §§ 1395–1399 ; Code Civ. Pro. § 1638 ; *Churchill* v. *Onderdonk*, 59 N. Y. 134 ; *Lehman* v. *Roberts*, 86 id. 232 ; *Livingston* v. *P. I. Co.*, 2 Paige, 390.)   The referee did wrong in finding as conclusion of law, that the plaintiff was entitled to the undivided one-third of the premises described in the complaint, and of the personal property of which Mrs. Ann Weed died possessed.   (*Winegar* v. *Fowler*, 82 N. Y. 315 ; *Jewett* v. *Miller*, 10 id. 402 ; *Frost* v. *Koon*, 30 id. 428 ; *Mallony* v. *Horan*, 49 id. 111 ; *Merrill* v. *Tyler*, Seld. Notes, 83 ; *Hills* v. *Varet*, 3 N. Y. Leg. Obs. 105 ; *Payne* v. *Burnham*, 62 N. Y. 74 ; *Miller* v. *Zeimer*, 111 id. 445 ; Bigelow on Est. [5th ed.] 652 ; *Loos* v. *Wilkinson*, 113 N. Y. 498 ; *Leonard* v. *Spencer*, 108 id. 338.) The referee erred in finding that the defendant is estopped from asserting, as against the plaintiff, any title in himself, under and by virtue of the deed from Ann Weed, as to the one-third interest in the homestead and the one-fourth interest in the personal property. (*Reed* v. *McCourt*, 41 N. Y. 438 ; *Leonard* v. *Spencer*, 108 id. 338 ; *Martin* v. *Gilbert*, 119 id. 314 ; *Carpenter* v. *Buller*, 8 M. & W. 209 ; *Claflin* v. *B. & A. R. Co.*, 32 N. E. Rep. 659 ; *Champlain* v. *Valentine*, 19

Barb. 488.) Evidence of A. W. Shurtleff as to what took place between him and Mrs. Ann Weed, the grantor, at the time of drawing the deed to the defendant, should have been excluded. (*Hebbard* v. *Haughian*, 70 N. Y. 54.)

*Chester M. Elliott* for respondent. The relief prayed for, and allowed by the referee and contained in the decree, was the proper relief to which plaintiff was entitled under the doctrine of estoppel. (*Thompson* v. *Simpson*, 128 N. Y. 270; *Brown* v. *Brown*, 30 id. 519; *Plumb* v. *C., etc., Co.*, 18 id. 392; *M. & T. Bank* v. *Hazard*, 30 id. 226; *C. N. Bank* v. *N. Bank*, 50 id. 575; *Blair* v. *White*, 69 id. 113; *Boardman* v. *L. S. R. R. Co.*, 84 id. 157; *DeHerques* v. *Marti*, 85 id. 609; *T. B. Co.* v. *Duncan*, 86 id. 221–228; *Storrs* v. *Baker*, 6 Johns. Ch. 166; *N. Y. R. Co.* v. *Rothery*, 12 N. Y. S. R. 53; *Briggs* v. *Langford*, 26 id. 599; *Clare* v. *Lockard*, 31 id. 69; *Trustees, etc.*, v. *Smith*, 30 id. 105, 107, 108.) The plaintiff, relying upon what defendant said, acted upon it and parted with her title to the eight acres, and defendant must make good his representations. (2 Pom. Eq. Juris. 283, § 821; *Lehman* v. *Roberts*, 86 N. Y. 232–239; *Bookes* v. *Lansing*, 74 id. 437–443; *Moores* v. *Townshend*, 102 id. 387, 393; *Lattin* v. *McCarty*, 41 id. 107; *R. P. Co.* v. *O'Dougherty*, 81 id. 481.) The defendant was not entitled to have this case tried by jury. (*C. R. M. Co.* v. *Combs*, 39 Fed. Rep. 25; *L. Z. & I. Co.* v. *Trotter*, 10 Atl. Rep. 607; *Hollister* v. *Stewart*, 20 N. Y. S. R. 949; *Sherry* v. *Smith*, 39 N. W. Rep. 556; *S. P. & S. C. R. Co.* v. *Robinson*, 41 Minn. 394; *Taylor* v. *Taylor*, 43 N. Y. 578–584; *Murtha* v. *Curley*, 90 id. 372–378; *Van Rensselaer* v. *Van Rensselaer*, 22 N. Y. S. R. 951; *Valentine* v. *Richardt*, 126 N. Y. 272; *Wetmore* v. *Porter*, 92 id. 76–80; *Bell* v. *Merrifield*, 109 id. 202; *Rindge* v. *Baker*, 57 id. 209; Fry on Spec. Perf. [3d ed.] 17; *Lee* v. *Tillottson*, 24 Wend. 337; *Wheelock* v. *Lee*, 74 N. Y. 495.) The plaintiff was entitled to recover the one-third part of the homestead premises and the one-fourth of the personal property. (*Grissler* v. *Powers*, 87 N. Y. 57.)

This being an equity case a new hearing will not be granted, or judgment reversed merely on the ground that proper evidence was rejected at the trial, if on all the facts and circumstances the court is satisfied the result ought not to have been different if such testimony had been received. (*In re N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 342; *Burt* v. *Oneida Community*, 41 N. Y. S. R. 48–67.)

MAYNARD, J. The substantial relief which the plaintiff has secured in this action consists of a decree adjudging that she is the equitable owner of an undivided one-third of the real property described in the complaint, of which the defendant has the legal title, and directing that he convey to her the share to which she is thus entitled. The parties are children of Charles H. Weed, who died intestate in June, 1889, seized of three parcels of real estate, and leaving, besides these parties, a widow, two daughters and a son surviving him. At the time of his death his widow was the owner of a house and lot upon which the family resided, and known as the homestead property. The daughters were all married and lived away from home, but in or near the same village. The other son was an invalid and unmarried, and died in February, 1890, intestate. The defendant was then forty-four years of age and unmarried, and had not lived at home since he was sixteen, but had frequently visited his parents, and was at the homestead when his father died, and remained there after his death caring for the mother and the invalid brother. Mrs. Weed seems to have had a mother's love and affection for all her children, and her relations with them all were friendly and cordial, but she was especially fond of the defendant; and it is evident that she confided in him fully, and that he had the entire control and management of her affairs after her husband's death. She died March 28, 1890, also intestate. One of the pieces of real property owned by the father and known as the eight-acre parcel was in the possession of Mrs. Caroline Putnam, one of the daughters, who had occupied it since 1865, and who claimed that she had gone into

possession under an agreement with her father, which had been performed on her part, that if she would live upon the property and improve it and make her home there he would convey it to her and it should be her property. Subsequently, the father mortgaged the premises to the plaintiff's husband, which mortgage was outstanding when he died, and shortly after his death an action was brought to foreclose it, to which all his heirs at law were made parties defendant. Mrs. Putnam interposed a defense, setting up the agreement with her father and claiming that by virtue of it she was the rightful owner of the property and entitled to a deed free of all incumbrances.

Various attempts were made in the lifetime of the mother to settle this controversy, in which the defendant actively participated. Mrs. Putnam finally proposed that if the other heirs would convey to her their interest in the eight acres, she would pay off the mortgage and convey to them her interest as heir at law in the other pieces of real estate owned by her father. It was shown that these pieces were worth from $5,000 to $6,000, and it has been found that Mrs. Putnam's lot, after paying off the mortgage, was worth $1,650.

If her proposition had been accepted she would thus have received nearly a full equivalent in value for the exchange which she had made. The plaintiff alone strenuously objected to a settlement on these terms, giving as her principal reason that both Mrs. Putnam and the other sister, Mrs. Gilmore, had received from the father in his lifetime advancements to the amount of several thousands of dollars in excess of what she had received, and that by this arrangement she would not be placed upon an equality with the other heirs. Pending the negotiations the mother died, apparently the owner of the homestead and of personal property of the value of $600, and the plaintiff, as one of her heirs at law, was entitled to an undivided one-fourth of whatever estate she may have left.

Mrs. Putnam's suit was noticed for trial the following week and the efforts for a compromise were renewed, in which the defendant was a prominent actor. He represented to the

plaintiff that she ought now to be willing to accept of the terms proposed, because by reason of the death of Mrs. Weed she would become entitled to a share of her property in addition to that which she had in her father's estate, or what she would acquire by the transfer from her sister. The plaintiff was still reluctant to consent to a settlement and still claimed that she should receive more in order to render her portion equal to that which the other heirs would receive. Mrs. Putnam then proposed to convey to the plaintiff and defendant and Mrs. Gilmore her interest in the homestead, which they all assumed belonged to the mother when she died, in addition to the two pieces of real estate owned by the father, and the defendant urged the plaintiff to accept of this proposition, and stated to her that if she did, she would have a one-third interest in the homestead and her share of the personal property, and that his mother had not made any will or any disposition of her property that he knew of. The plaintiff then consulted with her attorney, Mr. Wm. E. Hughitt, of Auburn, and intrusted him with the further management of the business. He had a conference with the defendant at the office of his attorney, in which he stated the terms of settlement, as he understood them, to which the defendant assented.

It is manifest that both the plaintiff and her attorney suspected that owing to the confidential relations existing between defendant and his mother she might have made a will in his favor, or conveyed her property to him, and the attorney before leaving Auburn examined the records of the clerk's office to see if any conveyance from her had been recorded, and found none. Mr. Hughitt stated to the defendant that the plaintiff understood that the mother had made no will or any conveyance of her property, so that her children would take her estate under the law, and the defendant replied, he supposed that was so. Again, while the preparation of the papers was in progress, the attorney, desirous of making sure of this point, went out and found the defendant and said to him, the only uncertainty about the adjustment of the matter,

and the only hesitancy he had about advising acceptance of the proposition for settlement, arose out of the possibility of Mrs. Weed's having made a will or conveyed the homestead property; that the plaintiff had no idea that anything of the kind had been done, and that the other sisters knew of nothing of the kind, and the defendant replied: "Well, if she has done anything of the kind I don't know it." Mr. Hughitt then said that under those circumstances he thought it was reasonably safe for him to say so to the plaintiff, and the defendant repeated the assurance he had given. These statements were communicated to the plaintiff through her husband, who was acting for her, and who directed Mr. Hughitt "to go ahead and finish the papers under those circumstances." A deed was then drawn from the defendant and plaintiff and Mrs. Gilmore, to Mrs. Putnam, of the eight-acre parcel, and a deed from Mrs. Putnam to the three, of the two other pieces of real estate belonging to the father and of the homestead property. Defendant was present when the latter deed was drawn, and gave Mr. Hughitt the description of the homestead for insertion in the deed, in which it is also described as the same lands and premises owned and occupied by his mother at the time of her death. The deeds were completed late in the afternoon of April 3d, and given to the plaintiff to procure their execution. They were not executed the next day, because Mrs. Putnam desired to consult with her attorney before executing her deed, and there was some change to be made with respect to the furniture and household effects; but they were executed and delivered the next day, April 5th. On the afternoon of the fourth the defendant went to Auburn and left with a friend to be placed upon record, as soon as the clerk's office was opened, on the fifth, a warranty deed executed by his mother July 24th, 1889, conveying to him the homestead and all her personal property with possession to be given at the death of the grantor. It was drawn by and acknowledged before the defendant's attorney; it recited a consideration of one dollar and natural love and affection, and knowledge of its existence had been withheld from the plaintiff and the

other members of the family. The plaintiff testifies and the referee has found that she executed the deed to Mrs. Putnam upon the faith of the assurance given by the defendant that she should have a one-third interest in the homestead and her share of the personal property, and relying upon his representations with respect to the title. It also appears that after the mother's death, and before the execution of the deeds, the sisters went to the house and made an inventory of the personal effects in the presence of the defendant and without any objection from him or any assertion on his part of exclusive ownership of them.

Upon these facts we think the plaintiff's right to the relief which she has obtained cannot be questioned. Without considering how far the representations of the defendant might conclude him by way of an estoppel, an analysis of the transaction will disclose the presence of all the essential elements of a contract between the parties, which has been so far performed by the plaintiff that equity will decree its specific performance by the defendant.

It was, in effect, an engagement by him that if the plaintiff would convey her interest in the eight-acre parcel to Mrs. Putnam and thus secure for him, as well as for the plaintiff and Mrs. Gilmore, a conveyance from Mrs. Putnam of her interest in the residue of his father's estate and of the homestead property, he would assure to the plaintiff the enjoyment of an undivided third of the homestead and of an undivided fourth of the personal property. There was implied in this assurance the obligation on his part to perform every act within his power which might be necessary to make his declaration good. If the mother had not conveyed or devised the property in her lifetime this obligation would have been fully met by the conveyance from Mrs. Putnam to the plaintiff and defendant and Mrs. Gilmore; but if the defendant had become possessed of the title it could only be discharged by a conveyance from him to the plaintiff of the share which he had undertaken to secure to her. We need not presume that when the transaction occurred he intended to perpetrate a fraud upon his

sister. On the contrary, it may be inferred that he acted innocently when he made the representation, knowing that he had the power to fulfill its requirements either by suppressing the deed which he had secretly taken, or by transferring to the plaintiff the portion which she expected and he designed she should have. If he subsequently changed his mind and sought to withhold that which he promised to bestow, it neither extinguished her right to demand nor his duty to make full performance. Had he put his representations in writing under seal, virtually promising the plaintiff that if she would convey to her sister, he would assure her the possession of a one-third interest in the homestead, to which he had the title, can it be doubted that equity would compel a specific performance when it appeared that the plaintiff had performed on her part, and that his promise had been the inducement of her act? The equitable rights of the plaintiff are not less potential because the undertaking of the defendant was oral. It may be admitted that the plaintiff expected that she would derive her title to the homestead by means of heirship from an intestate mother, conjoined with a conveyance from her sister as one of the heirs, but she had no reason to fear that this expectation would be disappointed, unless the defendant had procured from the mother a secret conveyance of the property, and hence she took the precaution to exact from him a guaranty that no such conveyance had been made. The material and controlling thing upon which the minds of the parties did meet was that she should have a one-third interest in that which was her mother's property, and which she then believed belonged to her estate, and the defendant knew that she had such belief, and he cannot, by the assertion of a title in himself, derived from the mother, defeat the fulfillment of his own agreement.

The case shows, and the referee has found, that the statements and representations of the defendant were made to the plaintiff to induce her to consent to an adjustment of a controversy which obstructed the settlement of his father's estate. By reason of advancements made to the other sisters, plaintiff

claimed that she was entitled to a larger share than the undivided one-fourth part.

The defendant, in his testimony, admits that the plaintiff made this claim, and that in the last conversation he had with her on March 8th, before the mother's death, she refused to consent to the settlement unless he made up the sum of five hundred dollars in addition to the share she would have as heir at law.

With the merits of her claim we are not concerned. It is sufficient that she made it apparently in good faith; that it stood in the way of the adjustment of the father's estate; that she was unwilling to forego it until she had received something more than her equal undivided share as heir at law, and that she did release it in the expectation of receiving an equivalent out of her mother's estate. The case is analogous in its important features to that of *DeHerques* v. *Marti* (85 N. Y. 609). The appellant there had a deed from her mother of a house and lot and, after her death, for the purpose of effecting a distribution of the estate, she agreed not to make any claim of title under the deed, but that it might be treated as a part of the mother's estate and distributed accordingly. The agreement was enforced against her, Chief Judge FOLGER saying (p. 610): "The effect is the same, that for the purpose of bringing about a settlement and distribution of her mother's estate, the house at Mantanzas is a part of the estate, and is so a part of the estate, as if it had never been the appellant's. And the declaration of the appellant, whether it is to be taken as speaking of a prior agreement then recognized and restated, or as of an agreement then first made, does show forth a contract that the appellant never had ownership, or absolute and sole interest in the property; that is to say, a contract that she will so act then and thereafter, as if she never, then or in the past, had ownership therein. It is an agreement founded on a good consideration, to wit, that she shall no longer be bound by the advancement; the amicable and speedy settlement and distribution of the estate, by which she got what she preferred, that is, personal rather than real

estate, and by which, the advancement being annulled, she got a share in that very Mantanzas property. To be sure, no contract could make it that she never had ownership of the property; but it could make it, and it was the purpose of the parties to make it, that, though she did once have ownership, that ownership was not to come into consideration in a settlement of the mother's estate; it was to go as if it never had been, and nothing was to be based upon the fact that it once existed."

In the present case, we cannot regard the representations of the defendant in any other light than as the legal equivalent of a surrender by him of his right of exclusive ownership of the homestead under his deed in exchange for the surrender by the plaintiff of her claim to an increased allowance out of the father's estate, and for the conveyance by her to Mrs. Putnam of the eight-acre parcel. The defendant, as well as the plaintiff, was a party to the Putnam suit; was a grantee with the plaintiff in the Putnam deed; was equally interested with the other heirs in effecting an adjustment of that controversy, and has received and accepted the benefits which have flowed from the execution of the conveyance by plaintiff; and the final adjustment involved the settlement of the rights of the parties to the mother's estate equally with that of the father's.

Under such circumstances, we think it cannot be controverted that if a material representation is made by one party in regard to the subject-matter of the negotiation, upon which another party relies to his prejudice, and upon which it is intended that he shall rely, such representation will be given a contractual effect, and the party making it will be bound as by a promise to make it good. (Fry on Specific Performance [3d ed.], p. 146, § 297; *Piggott* v. *Stratton*, 1 DeG., F. & J. 33.)

The judgment was sustained in the court below by the application of the doctrine of estoppel. There are difficulties in the way of upholding it upon that ground to the full extent to which relief has been awarded which we do not deem necessary to consider.

1893.]     People ex rel. E. E. L. Co. *v.* Campbell.     543

N. Y. Rep.]                 Statement of case.

We think the plaintiff's right to a recovery rests upon the broader foundation of a contract obligation, which the defendant should be required to perform; and for that reason the judgment is right, and should be affirmed.

All concur; Andrews, Ch. J., and Earl, J., vote for modification by restricting the interest to be acquired by the plaintiff to one-twelfth of the homestead property.

Judgment affirmed.